OPINION OF THE COURT
 

 Per Curiam.
 

 
 *253
 
 Petitioner, a Judge of the Civil Court of the City of New York and Acting Justice of Supreme Court, First Judicial District, has requested review of the determination of the State Commission on Judicial Conduct that he failed to observe the "high standards of conduct” necessary to uphold the "integrity and independence of the judiciary” (Rules Governing Judicial Conduct [22 NYCRR] § 100.1;
 
 see,
 
 Code of Judicial Conduct Canon 1), and violated the rule that a Judge "shall act at all times in a manner that promotes public confidence in the integrity * * * of the judiciary” (Rules Governing Judicial Conduct [22 NYCRR] § 100.2 [A];
 
 see,
 
 Code of Judicial Conduct Canon 2 [A]) and, as a consequence, should be removed from office.
 

 After a full evidentiary hearing held before a Referee, submissions by the parties and oral argument, the Commission determined that petitioner made inappropriate remarks in the workplace to and about a female law intern and thereafter engaged in deceptive or duplicitous behavior with respect to those incidents and the Commission’s investigation of them. Petitioner argues that the Commission essentially "misused lack of candor charges” because there is no "contrary objective proof’ that petitioner lied
 
 (see, Matter of Kiley,
 
 74 NY2d 364, 370-371) and that although he made "serious mistakes,” his conduct merely reflects poor judgment and does not warrant the extreme sanction of removal
 
 (see, id,.).
 
 Having conducted a plenary review of the record (Judiciary Law § 44 [9]), we conclude that the Commission’s determination is supported by a preponderance of the evidence
 
 (see, Matter of Mogil,
 
 88 NY2d 749, 752), and that the sanction of removal is appropriate.
 

 The investigation of petitioner’s conduct was triggered by a complaint stemming from a note he passed to his court attorney, allegedly concerning the physical attributes of a female law intern, and that petitioner suggested, albeit in jest, to the same intern that she remove part of her apparel in his presence. Although petitioner denied, under oath, making such remarks and gave a different explanation for writing the note, the Referee and the Commission rejected his testimony. Based upon our independent review of the record and giving due deference to the credibility determinations of the Referee and the Commission
 
 (see, Matter of Sims,
 
 61 NY2d 349, 353,
 
 rearg denied
 
 62 NY2d 884), we find no reason to disturb their findings.
 

 Here, petitioner’s ribald note and indelicate suggestion, even if made in jest, are, without question, demeaning, entirely
 
 *254
 
 inappropriate and deserving of some sanction. Although we agree with the Commission that these isolated occurrences, standing alone, would not be sufficient to justify removal, petitioner’s misconduct is magnified here by a pattern of evasive, deceitful and outright untruthful behavior, evidencing a lack of fitness to hold judicial office.
 

 The most egregious instances of such misconduct occurred in connection with petitioner’s attempt to conceal the Commission’s pending investigation of the initial complaint while seeking an interim appointment to a vacancy on Supreme Court in the Twelfth Judicial District. First, in the course of completing a questionnaire for the Governor’s Judicial Screening Committee, petitioner encountered the question: "Have you ever been the subject of any inquiry or investigation by a federal, state or local agency (other than for routine background investigations for employment purposes)?” Petitioner responded "no,” despite the fact that he unquestionably was aware of the pending investigation, having testified before the Commission only two months prior. Petitioner signed the questionnaire and certified that "to the best of my knowledge the information I have supplied is complete, true and accurate.”
 

 Petitioner attempted to explain away this falsehood, asserting that he believed the question referred only to criminal investigations. His explanation, however, was rejected by the Referee and the Commission in light of the clear language contained in the questionnaire. After reviewing the record and the questionnaire itself, we agree with the Commission that petitioner’s explanation was, at the very least, disingenuous.
 

 Then, in May of 1995, petitioner was nominated by Governor Pataki to fill the Supreme Court vacancy and his name was submitted to the State Senate for confirmation. In accordance with the requirements of Judiciary Law § 45 (2), petitioner was asked to execute and promptly return to the Senate Judiciary Committee a waiver of his right to confidentiality as to any Judicial Conduct Commission records pertaining to him. Petitioner delayed returning the waiver until the day before his scheduled confirmation hearing despite repeated efforts by the Senate Judiciary Committee’s staff counsel to contact petitioner and procure the waiver. Petitioner asserted that the delay was attributable to his own second thoughts about accepting his pending elevation to Supreme Court. In light of petitioner’s otherwise active pursuit of the appointment, both the Referee and the Commission rejected petitioner’s explanation, as do we.
 

 
 *255
 
 Significantly, during this period of delay, petitioner was asked directly by staff counsel for the Senate Judiciary Committee whether he was the subject of any complaints before the Commission. He responded, unequivocally, in the negative. When confronted with these facts, he denied, under oath, that this conversation occurred. The Referee and the Commission credited the testimony of staff counsel over that of petitioner. Based upon our review of the record, we find no reason to disturb this credibility determination.
 

 Thus, we conclude that petitioner made false statements to the Commission and gave deceitful, and even dishonest, responses to the Governor’s Screening Committee and to the staff of the Senate Judiciary Committee. By no means can this pattern of behavior be explained as a "mere lack of recall” or described as "poor judgment”
 
 (see, Matter of Kiley,
 
 74 NY2d, at 369-370,
 
 supra).
 
 A further aggravating factor was that petitioner was motivated by his own personal gain to dissimulate in this manner
 
 (cf., Matter of Skinner,
 
 91 NY2d 142;
 
 Matter of Kiley, supra,
 
 at 370).
 

 Although the sanction of removal is reserved for those instances where the conduct is "truly egregious” and not merely an exercise of poor judgment
 
 (see, Matter of Mazzei,
 
 81 NY2d 568, 572;
 
 Matter of Kiley, supra,
 
 74 NY2d, at 369-370), we have recognized that the "truly egregious” standard is measured with due regard to the fact that Judges must be held to a higher standard of conduct than the public at large
 
 (see, Matter of Mazzei,
 
 supra;
 
 Matter of Aldrich v State Commn. on Judicial Conduct,
 
 58 NY2d 279, 283). Particularly relevant here is our conviction that "deception is antithetical to the role of a Judge who is sworn to uphold the law and seek the truth”
 
 (Matter of Myers,
 
 67 NY2d 550, 554;
 
 see, Matter of Cohen,
 
 74 NY2d 272, 278). Thus, we conclude that the Commission appropriately imposed the sanction of removal in this case.
 

 Accordingly, the determined sanction should be accepted, without costs, and petitioner should be removed from his office of Judge of the Civil Court of the City of New York and Acting Justice of Supreme Court, First Judicial District.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur in Per Curiam opinion.
 

 Determined sanction accepted, etc.