OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a Justice of the East Greenbush Town Court, Rensselaer County, has requested review of the determination of the State Commission on Judicial Conduct. The Commission concluded that he failed to observe the “high standards of conduct” necessary to preserve the “integrity and independence of the judiciary” (Rules Governing Judicial Conduct [22 NYCRR] § 100.1;
 
 see,
 
 Code of Judicial Conduct Canon 1); violated the rule that a Judge should “avoid impropriety and the appearance of impropriety” and “act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary” (22 NYCRR 100.2 [A];
 
 see,
 
 Code of Judicial Conduct Canon 2 [A]); “len[t] the prestige of judicial office to advance the private interests of * * * others” (22 NYCRR 100.2 [C];
 
 see,
 
 Code of Judicial Conduct Canon 2 [B]); and failed to “perform the duties of judicial office impartially and diligently” (22 NYCRR 100.3;
 
 see,
 
 Code of Judicial Conduct
 
 *28
 
 Canon 3). As a consequence, the Commission determined that he should be removed from judicial office.
 

 After a full evidentiary hearing held before a Referee, and oral argument at which both petitioner and his counsel appeared, the Commission sustained five charges of misconduct against petitioner. First, the Commission found that petitioner had permitted an attorney — with whom he shared office space, a business telephone and mailing address — to appear in the East Greenbush Town Court before petitioner in six criminal cases over five years without ever disclosing their ongoing relationship in the record or inviting objections to his presiding (Charge I; 22 NYCRR 100.2 [A]; Code of Judicial Conduct Canon 2 [A]). The Commission also concluded that petitioner had neglected his judicial duties, refusing to deal with more than 100 cases over the course of eight months (Charge III; 22 NYCRR 100.3; Code of Judicial Conduct Canon 3). Moreover, the Commission determined that petitioner made inappropriate, obscene and sexist remarks about his fellow Town Justice in the course of his judicial duties, undermining proper administration of the court (Charge IV; 22 NYCRR 100.1; Code of Judicial Conduct Canon 1). The Commission also found that petitioner had permitted a private individual to sit at the Bench and make ex parte recommendations with respect to the sentencing of certain defendants, despite clear warnings from the Commission that this practice violated the Rules of Judicial Conduct (Charge V; 22 NYCRR 100.2 [C]; Code of Judicial Conduct Canon 2 [B]). Finally, the Commission found that petitioner represented his former court clerk in her action against the very Town in which he served as a Justice (Charge VI; 22 NYCRR 100.2 [A]; Code of Judicial Conduct Canon 2 [A]).
 

 Petitioner does not dispute that the factual determinations made by the Commission are supported by the record, although he does urge certain mitigating circumstances. The main thrust of petitioner’s argument is that removal is unwarranted here because his conduct was not “truly egregious”
 
 (Matter of Collazo,
 
 91 NY2d 251, 255). Upon this Court’s plenary review of the record
 
 (see,
 
 Judiciary Law § 44 [9]), we find that the Commission’s determinations are supported by a preponderance of the evidence
 
 (see, Matter ofMogil,
 
 88 NY2d 749, 752) and that the sanction of removal is appropriate.
 

 The Commission’s investigation into petitioner’s conduct was triggered by a series of events arising from an ongoing dispute between petitioner and his colleague, Judge Catherine
 
 *29
 
 Cholakis. After a critical audit in 1995 by the State Comptroller concerning the operations of the Town Court, Judge Cholakis sought the termination of petitioner’s part clerk without first consulting petitioner. Petitioner characterized this action on the part of his colleague as a malicious scheme to “get rid of’ petitioner’s longtime court clerk.
 

 In order to resolve this dispute, a brief meeting between the Judges and a Town Councilman, serving as the liaison between the Town Board and the court, was convened in April 1996. After the meeting had ended and Judge Cholakis had left the room, petitioner turned to the Board member and referred to the Judge in obscene and sexist terms. In June 1996, petitioner directed a court clerk to cancel a court session because of petitioner’s illness. In response to the clerk’s inquiry regarding a substitution of Judge Cholakis to conduct the session, petitioner referred to her using the same vulgar and offensive terms. In a colloquy with a court clerk and bailiff in the summer of 1997, petitioner expressed his wish that Judge Cholakis be challenged in her bid for reelection, once more using the same obscenity in referring to her.
 

 Although petitioner never spoke of his colleague in this manner from the Bench, his comments were uttered in the course of his official duties. That petitioner repeatedly disparaged his judicial colleague in vile terms to various court employees and also to a member of the East Greenbush Town Board in the context of a meeting in which petitioner and his colleague were representing the Town Court demonstrates that this conduct undermined not only the dignity of a fellow Justice, but also the stature and dignity of petitioner’s court and the judicial system as a whole.
 

 Petitioner did not deny, either before the Commission or in the course of this Court’s review of the Commission’s determination, that he made these reprehensible remarks about his colleague. Instead, petitioner seeks to explain his actions by claiming that he was provoked by vulgar and profane speech by Judge Cholakis and her malicious attack on him and his former clerk. Judge Cholakis disputed petitioner’s accusation. The Referee, who saw and heard petitioner and Cholakis, rejected petitioner’s excuses. The Referee’s factual determination in this respect was adopted by the Commission, and we find no basis to disturb it.
 

 The foregoing absolutely indefensible conduct, while performing official duties and over such a protracted period as to dem
 
 *30
 
 onstrate that it was the product of deliberation, by itself casts serious doubt on petitioner’s fitness to hold judicial office — the standard for retention versus removal.
 

 Unfitness is strongly confirmed here because three of the four remaining additional ethical derelictions also bear the earmarks of willfulness. With respect to Charge III, the Commission inferred that petitioner’s neglect of more than 100 cases for a period of over eight months in spite of repeated reminders from court personnel, the Town Board and State auditors, was not inadvertent or caused by calendar congestion but instead was motivated by his “pique over the suspension of his court clerk.”
 

 As to Charge V, petitioner received a Letter of Dismissal and Caution from the Commission, dated May 3, 1995, informing him that certain practices of his violated section 100.2 (C) of the Rules Governing Judicial Conduct. This caution involved petitioner’s enlistment of the director of a private defensive drivers school in virtually an official capacity in his court. Specifically, this person reviewed mailed-in pleas and sat at the Bench, making recommendations as to whether certain defendants in traffic cases should be required to enroll in his own driving program. In addition, petitioner gave defendants pamphlets describing that driving program with an insert advising defendants to call the program director, the very individual enlisted by petitioner, and that “[n]o other course [wa]s acceptable.” Moreover, petitioner in effect deputized this person in the enforcement of dispositions, authorizing him to track the cases and report back to the court. This person also wrote letters to defendants, warning them that their failure to take his course would result in the suspension of their driver licenses.
 

 In the Letter of Dismissal and Caution, dated May 3, 1995, the Commission directed petitioner to cease these practices. Rather than scrupulously following the letter and spirit of the Commission’s caution, petitioner continued, until at least March of 1996, to invite this person to sit in the courtroom and then make ex parte recommendations regarding driver training of traffic offenders. Petitioner also continued to distribute the pamphlets of that person’s training program, only advising defendants who specifically asked, that any course approved by the Department of Motor Vehicles was acceptable. In sum, notwithstanding prior warnings from the Commission that such conduct violated the Rules Governing Judicial Conduct and clear directives from the Commission to cease using this person in this manner, petitioner evaded these warnings and
 
 *31
 
 directives and continued to engage in practices which “len[t] the prestige of judicial office to advance the private interests of * * * others.”
 

 Finally, in regard to Charge VI, petitioner’s representation, as attorney of record, of his former clerk in her suit against the Town to vacate her dismissal from that position created a patently unmistakable conflict of interest with petitioner’s official position as a Town Justice. When this conflict of interest was brought to his attention, rather than taking the appropriate action to remove himself completely from any role in that litigation, petitioner arranged for the mere substitution, as attorney of record only, of the attorney with whom he shared the same office space and facilities. Petitioner testified that he nevertheless “did all the work” on the case. Even after he was replaced as attorney of record, petitioner continued to take an active role in the litigation.
 

 The foregoing facts lead to the compelling conclusion that petitioner’s ethical derelictions were not merely the result of negligent oversight or lack of awareness of appropriate norms of judicial behavior. Rather, he deliberately evaded and violated his ethical responsibilities as a Judge.
 

 The sanction of removal is, to be sure, reserved only for those instances involving “truly egregious” conduct. This Court has, however, recognized that the “ ‘truly egregious’ standard is measured with due regard to the fact that Judges must be held to a higher standard of conduct than the public at large”
 
 (Matter of Collazo, supra,
 
 91 NY2d, at 255). Thus, we conclude that the Commission appropriately imposed the sanction of removal in this case.
 

 Accordingly, the determined sanction should be accepted, without costs, and petitioner should be removed from his office of Justice of the East Greenbush Town Court, Rensselaer County.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Rosenblatt concur in Per Curiam opinion; Judge Wesley taking no part.
 

 Determined sanction accepted, etc.